1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KERRY and MICHAEL WASHBURN,

           Plaintiffs,

    v.

GYMBOREE RETAIL STORES, INC., *et al.*,

           Defendants.

Case No. C11-822RSL

ORDER GRANTING DEFENDANT
GYMBOREE'S MOTION FOR
PROTECTIVE ORDER IN PART

      This matter comes before the Court on Defendant Gymboree's "Motion for Protective Order Regarding Plaintiff's Notice of Rule 30(b)(6) Deposition" (Dkt. # 30). Defendant asks the Court to strike Plaintiffs' request in its entirety, or at least limit Plaintiffs' requests, because the asserted topics are irrelevant or would intrude upon the attorney-client or attorney work-product privileges.  The Court GRANTS the motion IN PART.  Plaintiffs may not inquire into the substance of any communication between corporate counsel and any corporate employee unrelated to the issue of the cause for Plaintiff Kerry Washburn's firing.  Gymboree has otherwise waived any privileges it may have been able to assert against disclosure or inquiry into the circumstances surrounding its shifting rationales for firing Ms. Washburn.[1]

_____

[1] In addition, the Court GRANTS Plaintiffs' unopposed motion to accept their Response (Dkt. # 37) and their motion to strike as hearsay (Dkt. # 40) the Sanders reply declaration.

ORDER DENYING DEFENDANT GYMBOREE'S MOTION FOR PROTECTIVE ORDER – 1

## I. BACKGROUND

To understand the cause for the parties' disagreement, it is necessary to briefly describe the facts underpinning this case. This suit concerns Gymboree's reason for firing Ms. Washburn in 2010. See Amended Complaint (Dkt. # 42). Ms. Washburn contends that she was fired after she was diagnosed with multiple sclerosis in 2009 and subsequently began requesting accommodations for her medical conditions. E.g., id. at ¶ 2.19. Specifically, she alleges Gymboree fired her after she complained to upper management that she was being harassed at her store because of her condition and asked to be moved to a different store. Id. at ¶¶ 2.7–2.10.

In response, Gymboree initially stated that one of its district managers, Ms. Rackley, had offered to transfer Ms. Washburn to either of two alternative stores after learning of her complaint and had fired Ms. Washburn only after she failed to respond to that offer. See id. at ¶ 2.15. In fact, Gymboree relied on this account in defending itself against Ms. Washburn's complaint to the Washington State Human Rights Commission ("WSHRC"). Id. at ¶ 2.16. And it reiterated this account when responding to Plaintiffs' initial interrogatories. Mot. (Dkt. # 30) at 5.

Gymboree changed its position, however, after Ms. Washburn disclosed that she had kept each of Ms. Rackley's messages and that neither included an offer to transfer to any alternate locations. Id. Stating that its previous position was the result of an innocent mistake of memory on the part of Ms. Rackley, Gymboree now contends that it terminated Ms. Washburn after she failed to respond to its request that she "let [it] know if she was interested in any [other] locations." Id. at 3.

Plaintiffs are not convinced. To get to the bottom of the matter, they noticed Gymboree to designate a representative to be deposed on the following five topics: "(1) The sources of information and factual basis for all statements made in the interrogatory answers and the WSHRC response; (2) An identification of all actions, investigation and

process Gymboree undertook to formulate/determine the content and or accuracy of those matters; (3) The identity of all individuals Gymboree spoke with to prepare its interrogatory responses and its WSHRC response and what these people said; (4) An identification of every person who read or approved Gymboree's discovery responses; and (5) The identity of the individual to whom Gymboree sent a copy of its response to the WSHRC." Mot. (Dkt. # 30) at 5. The present motion followed.

## II. DISCUSSION

Federal Rule of Civil Procedure 26(c) allows a court the discretion to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" for "good cause." "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002). The showing must be particularized. Id. "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992).

In the present case, Gymboree offers two examples of "good cause." First, it contends that each of the topics is irrelevant because it was under no burden to transfer Ms. Washburn to an alternate store and that the "compulsion of production of irrelevant information is an inherently undue burden." Mot. (Dkt. # 30) at 7–9 (citing Jiminez v. City of Chi., 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010) (Pechman, J.)). Second, it contends that topics one through three would intrude upon attorney-client privilege or would require the disclosure of attorney work product. See Reply (Dkt. # 38) at 3 n.3.

## A. Relevance

The Court turns first to Gymboree's objections as to relevance. It notes that relevancy in the discovery context is not a high hurdle. A party may obtain discovery

"regarding any nonprivileged matter that is relevant to any party's claim or defense," so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  And in this case, the Court finds that counsel's proposed inquiry into the issue and circumstances of Gymboree's shifting reasons for firing Ms. Washburn meets this standard—so long as counsel's questions remain tethered to that issue and those circumstances.

While Gymboree may be correct that it was under no requirement to transfer Ms. Washburn, that does not mean that its apparent uncertainty regarding its offer is irrelevant.  To the contrary, this case largely boils down to a question of Gymboree's motivation for firing Ms. Washburn:  whether Gymboree had a legitimate alternate basis as it contends, Mot. (Dkt. # 30) at 3, or whether it fired her because of her disability or her complaints of harassment as Plaintiffs contend, see Amended Complaint (Dkt. # 42). Accordingly, Gymboree's apparent uncertainty or confusion as to its own, or its agent's, motivation is extremely relevant.  Payne v. Nw. Corp., 113 F.3d 1079, 1080 (9th Cir. 1997).  It is evidence that the legitimate explanation being offered is merely a pretext—"'that neither of the official reasons was the true reason.'"  E.g., id. (citation omitted) ("Norwest's stated reason for terminating Payne changed several times over a period of only a few months. . . .  A rational trier of fact could find that these varying reasons show that the stated reason was pretextual, for one who tells the truth need not recite different versions of the supposedly same event.").

Moreover, as Payne explains, a trier-of-fact can only truly weigh the import of an employer's "shifting explanations" when "viewed in the context of other surrounding events."  Id.  While, even innocent, yet "fundamentally different justifications" are typically sufficient to get the issue of pretext before the trier-of-fact, Plaintiffs' claim would gain far more weight if they unearth evidence that Gymboree or Ms. Rackley knew the original stated rationale for firing Ms. Washburn was false or was made in the

ORDER DENYING DEFENDANT GYMBOREE'S MOTION FOR PROTECTIVE ORDER – 4

face of credible contrary evidence.  See id.  Because each of the noticed topics appear

reasonably calculated to delve into just such matters, each is relevant.

**B.  Attorney-Client and Work-Product Privileges**

Having found each of the noticed topics to be relevant, the Court considers

whether any are protected by the attorney-client or work-product privileges.

**1.  Sources of information and factual basis**

The Court finds that neither privilege precludes inquiry into the "sources of

information and factual basis for all statements made in the interrogatory answers and

the WSHRC response."

First, in Upjohn Co. v. United States, the Supreme Court explained that the

attorney-client privilege protects only "disclosure of communications; it does not protect

disclosure of the underlying facts by those who communicated with the attorney . . . ."

449 U.S. 383, 395 (1981).  Thus, as is the case here, "[t]he client cannot be compelled to

answer the question, 'What did you say or write to the attorney?' but may not refuse to

disclose any relevant fact within his knowledge merely because he incorporated a

statement of such fact into his communication to his attorney."  Id. at 396 (emphasis

added) (citation omitted) (noting that "the Government was free to question the

[corporate] employees who communicated with Thomas and outside counsel"); accord

Hickman v. Taylor, 329 U.S. 495, 508 (1947) ("[T]he protective cloak of this privilege

does not extend to information which an attorney secures from a witness while acting for

his client in anticipation of litigation.").

Second, even assuming that the attorney-client or work-product privileges would

have applied, Gymboree has waived those privileges as to its sources and the factual

basis for its termination-related responses by voluntarily disclosing that information.

Compare, e.g., Dkt. # 32 (declaration of Defendant's counsel disclosing both the

substance of his communications with Ms. Rackley and the fact that he relied entirely on

ORDER DENYING DEFENDANT GYMBOREE'S MOTION FOR PROTECTIVE ORDER – 5

Ms. Rackley's recollection to prepare Gymboree's submissions and responses), <u>with Hernandez v. Tanninen</u>, 604 F.3d 1095, 1100 (9th Cir. 2010) (citing <u>Weil v. Inv./Indicators, Research & Mgmt.</u>, 647 F.2d 18, 24 (9th Cir. 1981).  As the Supreme Court has explained, once the cat is of the bag, there is no going back in.  <u>See</u> <u>United States v. Nobles</u>, 422 U.S. 225, 239–40 (1975).  A party "can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination." <u>Id.</u>  Neither can it rely on the attorney-client privilege.  Again, "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." <u>Weil</u>, 647 F.2d at 24.

Accordingly, because Gymboree has elected to disclose both its sources and factual basis for its responses, Plaintiffs may freely inquire "as to all other communications <u>on the same subject</u>." <u>Tanninen</u>, 604 F.3d at 1100 (emphasis added).

### 2.  All actions, investigation and process Gymboree undertook

The Court likewise finds that Gymboree's voluntary disclosure of the steps it took to investigate Ms. Rackley's account of Ms. Washburn's firing, <u>e.g.</u>, Dkt. # 32, precludes its attempt to limit discovery into the matter because, as noted,"[d]isclosing a privileged communication . . . results in waiver as to all other communications on the same subject." <u>Tanninen</u>, 604 F.3d at 1100.

### 3.  Identity of individuals Gymboree spoke with and what these people said

Finally, the Court finds that only the substance of communications between corporate counsel and corporate employees unrelated to Gymboree's reasons for firing Ms. Washburn remains privileged.  <u>Upjohn</u>, 449 U.S. at 395; <u>Tanninen</u>, 604 F.3d at 1100.  For the stated reasons, Gymboree has waived whatever privilege it might

1   otherwise have been able to assert by disclosing the substance of its counsel's

2   communications with Ms. Rackley on that subject.[2] Compare, e.g., Dkt. # 32, with

3   Tanninen, 604 F.3d at 1100, and Nobles, 422 U.S. at 239–40.

### III.  CONCLUSION

4

5       For all of the foregoing reasons, the Court GRANTS the motion IN PART.

6   Plaintiffs may not inquire into the substance of any communication between corporate

7   counsel and any corporate employee unrelated to the issue of the cause for Ms.

8   Washburn's firing.  The Court DENIES the motion in all other respects.

9

10      DATED this 14th day of June, 2012.

11

12                                 *Robert S. Lasnik*
                                   Robert S. Lasnik
13                                 United States District Judge

14

15

16

17

18

19

────────────────────

20      [2] To be clear, counsel for Defendant acted appropriately in disclosing the steps it took to

21  investigate Ms. Rackley's account of Ms. Washburn's termination.  Wash. Rules of Prof'l
    Conduct R. 1.6 cmt. 10 ("Where a legal claim or disciplinary charge alleges complicity of the

22  lawyer in a client's conduct or other misconduct of the lawyer involving representation of the
    client, the lawyer may respond to the extent the lawyer reasonably believes necessary to

23  establish a defense. . . .  Such a charge can arise in a civil, criminal, disciplinary or other
    proceeding and can be based on a wrong allegedly committed by the lawyer against the client or

24  on a wrong alleged by a third person, for example, a person claiming to have been defrauded by
    the lawyer and client acting together.  The lawyer's right to respond arises when an assertion of

25  such complicity has been made.").

26  ORDER DENYING DEFENDANT GYMBOREE'S MOTION FOR PROTECTIVE ORDER – 7